UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10916-RWZ

|  |  |
|---|---|
| MEGAN McGRAW<br>    Plaintiff<br><br>V.<br><br>FIELDS CORNER PLATE GLASS<br>INC., d/b/a FIELDS CORNER GLASS,<br>FIELDS CORNER AUTO GLASS, and<br>FIELDS CORNER AUTO & PLATE<br>GLASS, and RUSSELL TARDANICO<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## JOINT PRE-TRIAL MEMORANDUM

1. <u>Names and addresses of trial counsel</u>

Counsel for the plaintiff:                Counsel for the defendant Russell Tardanico:

Sol J. Cohen                              Martin S. Cosgrove
COHEN & SALES                             Cosgrove, Eisenberg & Kiley, P.C.
43 Thorndike Street                       803 Hancock Street, P.O. Box 189
Cambridge, MA 02141                       Quincy, MA 02170
(617) 621-1151                            (617) 479-7770


Counsel for defendant Fields Corner Plate Glass, Inc.:


Suzanne B. Matthews, Esq.
742 Washington Street, P.O. Box 501
Canton, MA 02021
(781) 828-0989

2. <u>Jury vs. non-jury</u>

This will be a jury trial.

3.   Summary of the parties' positions on liability and damages

   A.  Plaintiff's position

   Liability

   This is a sexual harassment case brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. 2000e, et seq. (Title VII) and M.G.L. Chapter 151B. The defendant Fields Corner Plate Glass, Inc. ("Fields Corner") is the plaintiff's former employer. Defendant Russell Tardanico is the owner of Fields Corner and is the plaintiff's former manager. The plaintiff's job responsibilities included administrative duties as well as sales duties for the defendants. She worked for the defendants from October, 2003 to approximately January 13, 2004.

   Defendant Tardanico subjected the plaintiff to a steady, frequent, pervasive pattern of sexually offensive comments and conduct during the plaintiff's employment. Tardanico's conduct ranged from repeated comments about the plaintiff's appearance and body (including her breasts and her buttocks), to frequent expressions of his romantic interest in the plaintiff and requests for dates, to fits of romantic jealousy, to ogling, and to unwanted touching. During a business trip to Florida that the defendant required in January, 2004, the defendant's conduct culminated in an incident during which the Tardanico lost his temper due to jealousy when he saw the plaintiff speaking with another man while at the same time she rebuffed Tardanico's romantic advances. Tardanico screamed obscenities at the plaintiff, who felt physically threatened and intimidated. Tardanico then tried to publicly portray the plaintiff as a prostitute. The plaintiff's employment ended after the January, 2004 business trip when she was instructed to pick up her personal possessions from the job site.

   The plaintiff contends that Tardanico's unwanted conduct and termination of the plaintiff's employment created a sexually hostile working environment and also amounted to

unlawful sexual harassment of the quid pro quo type. It is undisputed that Tardanico had supervisory authority over the plaintiff; therefore, Fields Corner will be strictly liable for his actions under M.G.L. Chapter 151B and most likely under Title VII as well.

### Damages

As a result of the defendants' unlawful sexual harassment, the plaintiff makes a claim for back pay and lost fringe benefits. Her total back pay claim is for $64,056.12. This is broken down as lost earnings in 2004 of $37,556.12; lost earnings in 2005 of $20,000.00; and estimated value of lost medical benefits (1/2004-9/2005) of $6,500.00. The plaintiff also claims that she suffered anxiety, some depression and other emotional distress as a result of the defendant's threatening, intimidating and embarrassing conduct and its economic and social costs.

### B. Defendants' position

Fields Corner Plate Glass, Inc.
Russell Tardanico

Fields Corner Plate Glass, Inc., d/b/a Fields Corner Glass, Fields Corner Auto Glass, and Fields Corner Auto & Plate Glass (hereinafter referred to as "Fields Corner Glass") is a small business located at 1377 Dorchester Avenue, Dorchester, MA. Russell Tardanico is the President of Fields Corner Glass.

Ms. McGraw first met Mr. Tardanico in the spring of 2003 while employed as a bartender at Fish Bones, located at Marina Bay, Quincy, MA. Mr. Tardanico was a regular patron at Fish Bones. In her deposition Ms. McGraw described Mr. Tardanico as very social. She stated that he talked regularly with the bartenders. Ms. McGraw referred to Mr. Tardanico as a very good tipper. During this same period of time Ms. McGraw also regularly spent time at

Fish Bones as patron. Ms. McGraw testified that Mr. Tardanico regularly bought drinks for other patrons including herself, her mother and her friends.

Ms. McGraw testified that while working as a bartender at Fish Bones Mr. Tardanico would comment on her "behind". She testified that he made a lot of sexual gestures to her and other bartenders. She stated that he grabbed people and slapped their behinds. He would try to hold her hand. He would try to kiss or hug her. Ms. McGraw stated that sometimes she asked him to stop. Other times she did not say anything. She just ignored him. Ms. McGraw stated that when she complained to her supervisor at Fish Bones about Mr. Tardanico's conduct he responded by stating "[I]t's just Russell. That's how he is." Ms. McGraw testified that mid summer 2003, Mr. Tardanico began bringing her flowers and balloons.

At some point in the fall of 2003, Ms. McGraw informed Mr. Tardanico that she was in the process of resuming her education and that she was seeking alternate employment until such time as her classes began. Mr. Tardanico offered Ms. McGraw employment at Fields Corner Glass. Ms. McGraw testified that because of Mr. Tardanico's conduct at Fish Bones she had some reservations about working for him. She testified that she was concerned that she might be uncomfortable ("in a sexual way") working for him. Ms. McGraw discussed her concerns with her mother and with "Melanie", a former female bartender from Fish Bones who was working at Fields Corner. Ms. McGraw testified that Melanie stated that "[H]e wasn't as bad at work." Nonetheless, Ms. McGraw accepted the job assuming that there would be some inappropriate comments by Mr. Tardanico during the course of her employment at Fields Corner.

In October 2003, Ms. McGraw accepted employment at Fields Corner Glass. The hours of her employment were Monday – Friday, 8:00 am. – 4:00 or 5:00 pm. and Saturday 8:00 am – noon. Although Ms. McGraw stated that Mr. Tardanico's "behavior at the bar lessened

meaning that he wasn't as verbal to me" after she began working at Fields Corner, she alleges that she was immediately uncomfortable with the work environment. She alleges that he made comments about the way females employees dressed. He allegedly commented on their bodies. Mr. Tardanico allegedly introduced Ms. McGraw to customers as his "girlfriend". Mr. Tardanico denies that his conduct toward Ms. McGraw was as alleged.

     Ms. McGraw was familiar with Mr. Tardanico first on a social basis. Mr. Tardanico acknowledges that on various occasions he had conversations with Ms. McGraw both in and outside the workplace. These conversations occurred in business as well as social settings. The interaction between Ms. McGraw and Mr. Tardanico was initiated by both parties, was of a social nature and took place in the presence of co-workers. Ms. McGraw was a willing and active participant in joking and bantering that occurred in and out of the work environment and both before and after she became employed by Fields Corner. Furthermore, Ms. McGraw unnecessarily put herself in situations that permitted repetition of precisely the conduct that she now allegedly finds offensive. In the summer of 2003, Ms. McGraw gave Mr. Tardanico a picture of herself in which she was wearing a low cut top, readily displaying her breasts. In December 2003, Ms. McGraw and other co-workers organized and paid for a birthday party for Mr. Tardanico. Ms. McGraw and other co-workers rented a limousine and took him out to lunch. They continued bar hopping into the evening. Alcohol was freely flowing in the limousine, at the restaurant and in the bars. Photographs taken throughout the day show Ms. McGraw sitting close to Mr. Tardanico and kissing him. Ms. McGraw appears in the pictures relaxed and having a good time. Ms. McGraw has acknowledged that it was she who was kissing Mr. Tardanico.

Ms. McGraw further alleges that Mr. Tardanico requested that she accompany him on a work related trip to Florida and that he had assured her that she would have her own room. Mr. Tardanico denies the facts as alleged by Ms. McGraw. Over the course of the winter of 2003 – 2004, on occasion Mr. Tardanico took personal trips to Florida. Mr. Tardanico's trips were known to the staff at Fields Corner Glass. In or about December, 2004, Mr. Tardanico scheduled a trip to Florida in January, 2004. It is Mr. Tardanico's position that Ms. McGraw became aware of this trip and requested the opportunity to accompany him on the trip. Mr. Tardanico accepted Ms. McGraw's offer. Ms. McGraw testified that Mr. Tardanico invited her to accompany him on a business trip to Florida. She stated that she had reservations about going with him and was "shocked" when he placed the tickets on her desk a couple of days before Christmas.

Ms. McGraw also testified, however, that a couple of days after she received the tickets there was a Christmas party at Fields Corner. Ms. McGraw voluntarily presented Mr. Tardanico with a gift of silk boxers and a silk bathrobe. Ms. McGraw testified that she gave him the bathrobe and boxers to wear during the trip to Florida. Ms. McGraw testified that she did not think that it was inappropriate to give this type of gift to a boss. She testified that she did not feel uncomfortable giving him this gift. Ms. McGraw testified that she did not feel embarrassed when Mr. Tardanico opened the gift. After presenting Mr. Tardanico with the gift in the presence of co-workers Ms. McGraw stated, "Now you have no excuse to ever be naked in Florida." Ms. McGraw stated that the only thing that made her feel uncomfortable about this situation was that some of the other girls in the office didn't care for her and she was sure that they would have something to say about the gift. Ms. McGraw further stated, "And I think anything that I did or said nice to Russell made me uncomfortable in front of them because they

were not nice to me." Ms. McGraw testified that she assumed that the other girls were jealous of her because Mr. Tardanico was "nicer" to her.

Mr. Tardanico and Ms. McGraw flew together from Boston to Ft. Lauderdale, Florida on January 9, 2004. Reservations were made for Mr. Tardanico and Ms. McGraw to stay at the Hyatt Regency Hotel, Pier 66, Ft. Lauderdale, Florida. Ms. McGraw was informed of all terms and conditions of the reservations prior to departure including the fact that only one room had been reserved for Mr. Tardanico and Ms. McGraw. Ms, McGraw testified that when she learned that only one room had been booked she stated, "I have to have my own room because he probably snores and because he'll probably walk around nude." Despite this fact, Ms. McGraw admitted that before she left for Florida she knew that there would probably only be one room and still agreed to go. Ms. McGraw never asked about the nature and substance of business that was allegedly to be conducted in Florida.

Mr. Tardanico and Ms. McGraw arrived at the Hyatt Regency on January 9, 2004. Ms. McGraw and Mr. Tardanico stayed in the same room on the evening of January 9th. Ms. McGraw did not express any dissatisfaction with the arrangements, did not make any alternate arrangements and willingly stayed in the room. On the morning of January 10th Mr. Tardanico left the hotel to meet with friends for coffee. Mr. Tardanico and Ms. McGraw met midday. Ms. McGraw informed Mr. Tardanico that she was going shopping with Mr. Tardanico's friend, John. A short time later Mr. Tardanico attempted to leave the establishment and realized that Ms. McGraw and John had taken his car without his permission. Mr. Tardanico was annoyed that Ms. McGraw had taken his car without his permission and took a cab back to the Hyatt Regency. Upon arrival at the Hyatt Regency, Mr. Tardanico noticed that Ms. McGraw and John were at the bar. Mr. Tardanico did not speak to Ms. McGraw and proceeded directly to the

7

room. A short time later Ms. McGraw returned to the room. Mr. Tardanico and Ms. McGraw argued. Ms. McGraw stated that she was leaving. Ms. McGraw began to pack her belongings and Mr. Tardanico left the room. Ms. McGraw moved to another hotel and returned to Boston on January 11, 2004. Ms. McGraw failed to return to work. Her employment was terminated on January 19, 2004.

Although Mr. Tardanico and Ms. McGraw's recollection of the events on January 10th differ, Ms. McGraw testified that a disagreement between her and Mr. Tardanico occurred at approximately 4:00 pm. on January 10, 2004, and that as of that time she had not made any effort to secure a second room at the hotel. Ms. McGraw further testified that before leaving for Florida she "expected Russell to freak out while I was in Florida." Ms. McGraw testified:

> I mean that I expected him to touch me in a way than made me unhappy. I expected him to swear and yell and cause a scene at a bar and have to be removed. I expected that here would be something explosive.

It is the position of defendants that Ms. McGraw was hired on a temporary basis from October 2003 – January 2004. Ms. McGraw obtained her undergraduate degree at Bridgewater State College in May 2000. Ms. McGraw enrolled in the graduate program at Bridgewater State College in the Spring of 2001. Upon completion of the fall semester 2003 Ms. McGraw was close to finishing her master's program. The remaining courses she had to complete to obtain a master's degree in counseling were Advanced Applied Counseling, two internship programs and one additional three credit course. The Advanced Applied Counseling course was designed to provide students with an opportunity to further examine and effectively apply counseling theory into practice and demonstrate this ability during the required practicum experience. The academic requirements of this course included the completion of 100 hours of internship between January – May 2004. The 2004 spring semester at Bridgewater State College began on

January 20, 2004. Ms. McGraw completed this internship program through Whitman Counseling Center. As an intern at Whitman Counseling Center, Ms. McGraw was required to see clients during the day and evenings, primarily between 2:00 pm – 5:00 pm.

Ms. McGraw completed her masters degree program in the summer and fall of 2004 by completing two additional internship programs. Each internship program required the completion of a minimum of 300 hours of fieldwork at an approved mental health fieldwork site. In the summer of 2004, Ms. McGraw worked approximately thirty afternoon and evening hours per week in the field of counseling. In the fall of 2004 Ms. McGraw completed her internship by working three days a week from 8:00 am. – 2:00 pm at Whitman High School. Ms. McGraw was awarded a Master's Degree of Education in the field of mental health counseling in January 2005. Upon graduation Ms. McGraw continued working at Whitman High School in a full time position. Ms. McGraw became employed as a full-time adjustment counselor at Bristol Plymouth Regional High School in September 2005.

In her complaint Ms. McGraw seeks lost wages through 2005 in the amount of $64,056.12 ($37,556.12 in 2004 and $20,000 in 2005), lost medical benefits in the amount of $6,500 and an undisclosed amount for emotional distress. Ms. McGraw's reported income for 2002 was $22,064. Her reported income for 2003 was $23,336. Ms. McGraw's reported income for 2004 was $14,444. When questioned at her deposition about her decrease in income Ms. McGraw testified that her drop in income was a result of her academic internship obligations and for no other reason.

Ms. McGraw has not engaged in any kind of counseling for the alleged emotional distress she has suffered as a result of Mr. Tardanico's conduct. Ms. Tardanico testified that she didn't feel any need to see a therapist as a result of the conduct of Mr. Tardanico. She testified that

because she was going to school for mental health she felt that she had a "pretty good tool belt to deal with friends and family.

To establish a claim of sexual harassment, the conduct at issue must be unwelcomed by the complainant. Ms. McGraw has failed to state a claim upon which relief can be granted.

4. <u>Facts established by pleadings or stipulation</u>

   1. The defendant Fields Corner employed the plaintiff from October, 2003 through January 13, 2004.
   2. The defendant Russell Tardanico had supervisory authority over the plaintiff during her employment with Fields Corner.
   3. The defendant Field Corner had 15 or more employees in the calendar years of the plaintiff's employment.

5. <u>Contested facts.</u>

a. Whether Mr. Tardanico subjected the plaintiff to unwanted conduct of a sexual nature that was extreme and pervasive and altered the terms and conditions of the plaintiff's employment.

b. The amount of the plaintiff's damages.

6. <u>Jurisdictional questions.</u>

None.

7. <u>Issues of law.</u>

a. Whether the Court should instruct the jury as to punitive damages. The plaintiff contends that the facts of this case warrant a jury instruction as to punitive damages.

8. <u>Requested amendments to the pleadings.</u>

None.

9. <u>Additional matters to aid in the disposition of the action.</u>

None.

10. <u>Probable length of trial.</u>

Four days.

11. <u>Names and addresses of witnesses.</u>

    <u>Plaintiff's witnesses</u>

    1. Megan McGraw
       Hanson, Mass.

    2. Milinda McGraw
       Hanson, Mass.

    3. Jeffrey McGraw
       Hanson, Mass.

    4. William Daley, Jr.
       Braintree, Mass.

    5. James Santry
       Quincy, Mass.

    6. Erin Holmes
       Boston, Mass.

    7. Amy Winter
       Weymouth, Mass.

    8. Ronald Phillips
       c/o defendant Fields Corner

    9. Robert McGrail
       c/o defendant Fields Corner

    10. Michelle Janoplis Lisbon
        c/o defendant Fields Corner

    11. Melissa Baker
        c/o defendant Fields Corner

    12.    Russell Tardanico
            Quincy, Mass.

The plaintiff reserves the right to call all witnesses listed by the defendants, any witnesses necessary for the introduction of otherwise admissible documents and things, and to supplement this list with reasonable notice to the defendants.

<u>Defendants' Witnesses</u>

1. Russell Tardanico

2. Megan McGraw

3. Melissa Baker
   c/o defendant Fields Corner

4. Ronald Phillips
   c/o defendant Fields Corner

5. Michelle Janopolis
   c/o defendant Fields Corner

6. Kathy Tardanico
   c/o defendant Fields Corner

7. Anne Rothstein
   c/o Fields Corner

12. <u>Exhibit list.</u>

    1. The plaintiff's personnel file

    2. Plaintiff's W-2 forms and federal tax returns for years 2003, 2004 and 2005.

    3. Defendant's payroll records relative to the years 2003 and 2004.

    4. The defendants' position statements filed with the Massachusetts Commission Against Discrimination.

    5. Defendants' financial statements and tax returns and filings from 2003-present.

    6. Photograph of Megan McGraw.

7. Photographs of Megan McGraw at Marina Bay.

8. Photographs of Megan McGraw and Russell Tardanico December 2003.

9. Plaintiff's W-2 forms and federal tax returns for years 2003, 2004 and 2005.

10. Records of Plaintiff's attendance at Bridgewater State College.

The parties agree and acknowledge that this list of exhibits is not a final list of agreed to exhibits, and represent that they will confer within a reasonable time prior to trial for the purpose of amending and/or supplementing this, and to pre-mark both agreed exhibits (with one set of consecutive numbers), and contested exhibits (with one set of identifying letters)

Respectfully submitted,

For the plaintiff,                                         For defendant Russell Tardanico,


Sol J. Cohen /s/                                          Martin S. Cosgrove /s/
Sol J. Cohen                                              Martin S. Cosgrove
BBO # 630776                                              BBO # 100920
COHEN & SALES                                             Cosgrove, Eisenberg & Kiley, P.C.
43 Thorndike Street                                       803 Hancock Street, P.O. Box 189
Cambridge, MA 02141                                       Quincy, MA 02170
(617) 621-1151                                            (617) 479-7770


For defendant Fields Corner Plate Glass, Inc.,


Suzanne B. Matthews  /s/
Suzanne B. Matthews, Esq.
BBO # 545284
742 Washington Street, P.O. Box 501
Canton, MA 02021
(781) 828-0989